IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| GERALD CAIN #812200 | § | |
| v. | § | CIVIL ACTION NO. 6:04cv510 |
| STEVEN LOFTIN, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Gerald Cain, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights during his confinement in the prison. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding. 28 U.S.C. §636(c).

An evidentiary hearing was conducted pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985) on February 24, 2005. At this hearing, Cain testified that he was assaulted by an inmate named Charles Powell on January 30, 2003, while at the Beto Unit of TDCJ-CID. Cain said that he had filed a life endangerment complaint in November of 2002, while he was at the Wynne Unit; he indicated that he had been sexually assaulted there.

Cain stated that after he filed the life endangerment complaint, he was moved, although this move was not because of the complaint which he had filed. He said that he was in transient status at the time he filed the life endangerment complaint, and that he wanted placement in protective custody rather than a move. At the time that he was moved to the Beto Unit, status, Cain said that he was on close custody because he had been in the dayroom while on restrictions. He said that in close custody, he had a cellmate but did not have a job, and that inmates on close custody ate and showered together.

At the chow hall, Cain said that there were some officers with a metal detector. Whenever the close custody inmates went somewhere as a group, Cain said, the inmates were supposed to go through the metal detector, but the officers often let them walk around it, or otherwise did not perform checks for metal.

On January 30, 2003, Cain said that officer Loftin allowed Powell to get through the metal detector even though Powell had a knife. This inattentiveness was permitted by Sgt. Lott. Powell then assaulted Cain.

Cain explained that Powell had sexually assaulted him at the Wynne Unit, and that he was questioned about it in front of Powell. This investigation took place at the Wynne Unit, but Powell was transferred to Beto like Cain was. In his complaint, Cain explained that Captain Simms had sent a subordinate to question him, and that this officer and Cain argued about the propriety of discussing the matter in front of other inmates. Cain also says that at some point during the investigation, Simms "became sexually aroused" and conducted a strip search of Cain, and that Lt. Knutson suggested that he "get a man."

Warden Thompson, a TDCJ-CID prison official also present at the Spears hearing, testified under oath regarding custody status. Thompson said that if an inmate files a life endangerment complaint, it is sent to the Unit Classification Committee. This committee can recommend to the State Classification Committee that the inmate be placed in protective custody, but the state committee has the final say. Thompson testified that according to Cain's records, he was not seen by the Unit Classification at the Beto Unit; Cain stated that he was sent to Beto for disciplinary reasons, because Wynne has no close custody. Warden Thompson confirmed that Cain was correct in his assertion about the Wynne Unit.

Nurse White, a prison nurse also present at the hearing, gave sworn testimony that she could find no mention of the incident in Cain's medical records. Cain explained that he was treated, but refused stitches, so the medical personnel steri-stripped the injury and deemed it "minor."

Chip Satterwhite, a TDC regional grievance coordinator, gave sworn testimony that according to prison records, Cain had exhausted his administrative remedies against all of the defendants except for Knutson and Dretke. There were indications that Officer Loftin may be deceased, although this was not clear.

### The Prison Records

At the <u>Spears</u> hearing, the Court received and has reviewed copies of certified authenticated prison records. According to these records, a prison investigation showed that on January 30, 2003, at 5:55 p.m., Powell assaulted Cain with a homemade weapon. Security officers ordered the inmates to stop fighting and then administered chemical agents. They were separated and taken for medical treatment, with Cain suffering a laceration on his left cheek and abrasions on his forehead. Powell was placed in pre-hearing detention and charged with assaulting an offender; Cain did not receive disciplinary action because he was determined to have been acting in self-defense. There is no mention of a metal detector in any of the investigation reports; however, the Court will assume that Cain's testimony in this regard is correct.

In September of 2002, while at the Wynne Unit, Cain filed a life endangerment request, and an investigation was conducted. The records show that Cain's complaint centered around his assertion that his cellmate, Mack Merida, was extorting him by forcing him to pay for protection by washing Merida's clothes for him. Cain was placed on transient status during the investigation, and filed an inmate request form while on transient status asking for placement in protective custody. In this request, Cain said that he is 5 feet 11 inches tall and weighs 140 pounds, and has blond hair and blue eyes. This slight build has caused him to be "forced to ride" (i.e. pay protection) wherever he has been confined; Cain said "Just put me in P.C., I'm too little to be out here."

The prison records show no mention, prior to January 30, 2003, of Charles Powell in any documents, grievances, or requests filed by Cain. In a grievance dated April 3, 2003, over two months after the assault, Cain says that Simms and another officer came to his cell in September of 2002 to talk to him about a life endangerment complaint which he had filed, and that Cain was upset

that Simms was "informing the whole cell block" that Cain had filed a complaint against "a known security threat group."  Cain states that he was later stabbed in the face by Powell, whom he identifies as having been present during the discussion he had with Simms.

On September 27, 2002, Cain filed a Step One grievance, saying that he wanted to be put on protective custody because he is "too little and weak" to make it in general population.  He says that he has been forced to pay protection on every unit he has lived on.  Cain stated that Lt. Knutson asked him questions and he answered them all honestly, even telling the officer who was currently protecting him.  However, Cain said, Knutson simply told him to "get a man."  Cain added that Simms was present during this interview and told Knutson that Cain had been "riding" at the Wynne Unit, and that Cain had been paying protection by "performing certain favors that no one should have to perform." As before, there was no specific mention of Powell in the grievance.  The response to this grievance was that Cain was no longer assigned to the Wynne Unit, so no further action could be taken, and an investigation had already begun on Cain's life endangerment complaint.

<u>Legal Standards and Analysis</u>

Cain's primary complaint is one of deliberate indifference to his safety.  The Supreme Court has explained that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

<u>Farmer v. Brennan</u>, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); *see* <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994).

In this case, Cain first asserts that Officer Loftin and Sgt. Lott permitted Powell to get through or around a metal detector without being checked, allowing Powell to bring a weapon; he stated that the officers often let inmates walk around the detector or did not check the inmates for metal.

Cain's claim against Loftin and Lott is essentially one of negligence. However, a claim of negligence alone is insufficient to state a valid civil rights claim under 42 U.S.C. §1983. The Supreme Court has stated that the Due Process Clause of the Fourteenth Amendment is not implicated by a negligent act of an official causing unintended injury to life, liberty, or property. Daniels v. Williams, 474 U.S. 327, 331-33 (1986). Complaints by prisoners for negligence on the part of prison officials, even where serious injury occurs, do not set out a valid claim under the Civil Rights Act even if such complaints could be valid under state law. *See* Bowie v. Procunier, 808 F.2d 1142 (5th Cir. 1987).

In Davidson v. Cannon, 474 U.S. 344 (1986), the Supreme Court faced the issue of what constitutes deliberate indifference to an inmate's safety. There, an inmate named Davidson was threatened by another inmate, McMillian. Davidson sent a note to the Assistant Superintendent of the prison, Cannon. Cannon passed the note to a guard named James. James, however, left the note on his desk and later forgot about it. McMillian later assaulted Davidson, causing serious injuries.

The Supreme Court acknowledged that the Defendants' lack of due care resulted in serious injury, but held that the lack of due care alone did not approach the sort of abusive governmental conduct that the Due Process Clause was designed to prevent. The Court emphasized that negligence alone was insufficient to trigger the protections of the Fourteenth Amendment. Davidson, 474 U.S. at 347-48.

Furthermore, the Fifth Circuit has held that while prison officials have a duty to protect inmates from violence at the hands of other prisoners, not every injury suffered by a prisoner at the hands of another rises to the level of a constitutional violation. Horton v. Cockrell, 70 F.3d 397, 400 (5th Cir. 1995). The plaintiff prisoner must prove both that he is incarcerated under conditions "posing a substantial risk of serious harm" and that the prison official's state of mind is one of "deliberate indifference" to the inmate's health or safety. Horton, 70 F.3d at 401, *citing* Farmer, 114 S.Ct. at 1977.

In Horton, the plaintiff arrived at the Clements Unit and was immediately approached by an inmate named Jackson, who threatened to assault him unless he paid extortion money. Horton reported the threat the next morning to a desk officer, who said that he could not do anything and referred Horton to his correctional counselor. Later that same day, Jackson approached Horton and made threatening gestures; Horton, believing that he had no choice, punched Jackson in self-defense. Both Horton and Jackson were placed in pre-hearing detention.

Horton filed a grievance the next day stating that Jackson was assaultive and had tried to extort money from him. The warden refused Horton any relief and referred him to his correctional counselor. Horton appealed, saying that he had already talked to his counselor, but the appeal was denied.

Horton and Jackson were sent to the same section of the prison when they were released from detention. Horton continued to file grievances concerning Jackson's violent tendencies. Several days later, Jackson approached Horton and punched him in the eye. Horton and Jackson were again charged with fighting, and the disciplinary committee would not consider Horton's plea of self-defense.

The Fifth Circuit determined that based upon these facts, Horton had stated an arguably valid claim of failure to protect, because he had alleged both a sufficiently imminent danger and a substantial risk of serious harm. The present case is a different matter altogether.

In this case, although Cain had filed complaints at the Wynne Unit alleging that he was in danger, he did not identify Powell in particular as being a specific threat to him. He has offered nothing to show that Loftin or Lott were on notice that he faced an imminent danger of serious harm. Instead, Cain's pleadings and testimony show that Loftin and Lott may have been careless in their duties by failing to monitor the metal detector as they should have, thereby allowing Powell to smuggle in a weapon. The fact that Cain suffered injury as a result of the apparent negligence of Loftin and Lott does not itself raise his claim to constitutional dimensions. Bowie, 808 F.2d at 1143. His claim against Loftin and Lott is without merit.

Cain also sued two officials at the Wynne Unit, Officer Simms and Officer Knutson. He says first that Simms sent a subordinate to question him, which was done in front of other inmates, and that Simms "became sexually aroused" and ordered him to submit to a strip search.

To the extent that Cain complains of Simms' responsibility for the acts of the subordinate officer, such a claim is founded upon the doctrine of *respondeat superior*, which the Fifth Circuit has held does not generally apply in Section 1983 cases. Williams v. Luna, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).

In this case, even if questioning Cain in the presence of other inmates somehow amounted to a constitutional violation, Cain has failed to show that Simms was personally involved in this deprivation, nor that wrongful conduct by Simms was causally connected to this constitutional violation. Neither has Cain shown that Simms implemented a constitutionally deficient policy which was the moving cause behind a constitutional deprivation. His claim against Simms on this point must fail.

Neither has Cain shown a constitutional violation in the fact of the strip search. He offers nothing beyond a conclusory allegation that this search was conducted because Simms "became sexually aroused; the Court is well aware that strip searches are routinely conducted in TDCJ-CID and that prison policy specifically provides for them. *See* TDCJ-CID Administrative Directive No. 03.22. The Fifth Circuit has held that civil rights claimants must state specific facts, not conclusory allegations. Brinkmann v. Johnston, 793 F.2d 111, 113 (5th Cir. 1986). Cain's claim on this point is without merit.

Cain next complains that Lt. Knutson was deliberately indifferent to his safety and told him to "get a man." However, TDCJ-CID records show that Cain did not exhaust his administrative remedies with regard to his claims against Knutson.

Prior to the passage of the Prison Litigation Reform Act, Public Law 104-134 (April 26, 1996), lawsuits brought by inmates who had not exhausted their administrative remedies would be stayed for a period of up to 180 days in order to permit exhaustion. 42 U.S.C. §1997e(a)(1). This provision has now been deleted from the law. As amended, 42 U.S.C. §1997e(a) reads as follows:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Title 42 U.S.C., Section 1997e(a), as amended by Public Law 104-134, Title I, sec. 101, April 26, 1996, *renumbered as* Title I, Public Law 104-140, sec. 1 (May 2, 1996, 110 Stat. 1327). No statutory basis now exists for placing a stay on the action; instead, completion of the exhaustion process is a mandatory prerequisite for filing the lawsuit.

In this case, Cain did not exhaust his administrative remedies against Knutson, and so these claims may be dismissed for such failure.[1] In addition, Cain has failed to show that he was the victim of deliberate indifference at the Wynne Unit; he concedes, and the prison records show, that when he made a life endangerment complaint at the Wynne Unit, he was moved into transient status and an investigation was conducted, and he was subsequently sent to the Beto Unit. Such actions belie a claim of deliberate indifference. While Knutson's comment may have been insulting and inappropriate, the Fifth Circuit has stated that threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations, and that the use of words, no matter how violent, does not comprise a section 1983 violation. Bender v. Brumley, 1 F.3d 271, 274 n.3 (5th Cir. 1993); Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973). Cain's claim against Lt. Knutson is without merit even had it been exhausted.

---

[1] The Fifth Circuit has held that a dismissal for failure to exhaust may be with or without prejudice. Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998).

Finally, Cain sued the Director of TDCJ-CID, Douglas Dretke, explaining that he was seeking only injunctive relief against the Director. He did not exhaust his administrative remedies against the Director and so his claim may be dismissed on this basis. In addition, Cain has made no showing that he is entitled to injunctive relief. The Fifth Circuit has held that to win a permanent injunction, a petitioner must show a clear threat of continuing illegality portending immediate harmful consequences irreparable in any other manner. Posada v. Lamb County, Texas, 716 F.2d 1066, 1070 (5th Cir. 1983). In this case, Cain is no longer at the Wynne Unit, where the alleged violation giving rise to the request for injunctive relief took place, nor has he shown a threat that continuing unlawful activities will take place. For this reason, his claim for injunctive relief against the Director of TDCJ-CID is without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Cain's claims lack any arguable basis in law and fail to state a claim upon which relief may be granted in federal court. Consequently, these claims may be dismissed as frivolous

under 28 U.S.C. §1915A(b).  *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and also, with respect to Cain's claims against Knutson and Dretke, for failure to exhaust administrative remedies.   It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

So **ORDERED** and **SIGNED** this **26** day of **April, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE